UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                           |
DIANA DIUNOV,                                              |
                                                           |
                  Petitioner,                        |
                                                           |         08 Civ. 3184 (KMW)
    -against-                                       |
                                                           |         <u>OPINION AND ORDER</u>
UNITED STATES OF AMERICA,                                   |
                                                           |
                Respondent.                        |
                                                           |
------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

      Petitioner Diana Diunov moves, pursuant to 28 U.S.C. § 2255, to vacate the judgment resulting from her guilty plea.  Petitioner pled guilty to three counts of mail fraud, wire fraud, and conspiracy to commit these crimes, and was sentenced by this Court to 78 months incarceration.

      Petitioner claims that she received ineffective assistance of counsel, because her lawyer, John J.E. Markham II ("Markham"), gave her inaccurate and/or misleading advice regarding the immigration consequences of her guilty plea.  As an alien convicted of an aggravated felony, Petitioner faces presumptively mandatory deportation. Petitioner asserts that Markham's representations to her that she had a good chance of obtaining a hardship waiver — where no such option is, Petitioner argues, readily available to her — fell below prevailing professional standards of practice, and accordingly, rendered her guilty plea involuntary.

      For the reasons set forth below, the Court DENIES the petition.  The Court finds that Markham's performance was not constitutionally deficient.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  Markham's advice to Petitioner broadly

reflected the immigration consequences of her guilty plea — that she was subject to deportation based on her conviction, but that there was a possibility that she could obtain a hardship waiver and avoid deportation. Although Markham failed to explain and/or mistated certain of the factors that would be relevant to obtaining a hardship waiver, Markham's advice to Petitioner was not objectively unreasonable under the circumstances, and therefore, did not deprive Petitioner of effective assistance of counsel.

I. Background

A. Petitioner's Immigration Status

In January 2000, Petitioner, a citizen of Israel, was permitted to enter the United States for a liver transplant. Because of her medical condition, Petitioner was unable to travel back to Israel. On July 9, 2002, Petitioner was legally admitted to the United States on a temporary visa. Also in 2002, Petitioner's daughter, Edita, who was born in Israel, joined Petitioner in the United States.[1]

On September 26, 2005 Petitioner married her current husband and co-defendant, Boris Shvartzman ("Shvartzman"), a naturalized United States citizen. The same year, Petitioner gave birth to her second child, Maryanne. Petitioner applied for permanent residence based upon her marriage to Shvartzman, but was advised by an immigration lawyer (one she hired to prepare the application) that she should cancel the scheduled interview in light of the pending criminal proceedings against her. Petitioner never obtained lawful permanent resident status.

B. The Plea

---

[1] On June 29, 2004, Petitioner married Levi Aron, a United States citizen, and applied for adjustment of status to permanent resident (as the wife of a United States citizen). The couple divorced, however, before Petitioner's application for an adjustment of status was approved.

On January 5, 2005, Petitioner was indicted on five counts of mail and wire fraud in connection with Petitioner's involvement, with her husband Shvartzman, in a scheme to defraud 24 diamond supply companies (in a fraud totaling over 1.7 million dollars).[2]

On March 16, 2006, Petitioner appeared before Magistrate Judge James C. Francis and pled guilty to three of the counts charged in the indictment.[3]  At the plea allocution, Magistrate Judge Francis asked Petitioner: "Do you understand [that] if you are not a United States citizen, you will be subject to deportation on the basis of your conviction?"  Petitioner responded: "I do." (March 15, 2006 Plea Tr.; Pet. Ex. C., at 6.) Magistrate Judge Francis stated that he was "satisfied that [Petitioner] understands the nature of the charges against her and the consequences of the plea of guilty."  He also stated that he was "satisfied that the plea is knowing and voluntary and that there's a factual basis for it."  (Tr. 19.)

Magistrate Judge Francis then asked if the parties wished to address the issue of bail.  The Government requested that the Court place Petitioner on electronic monitoring because she was a flight risk.  The Government stated that Petitioner "ha[d] pled guilty to what under the immigration law is an aggravated felony, which requires deportation." (Tr. 20.)  The Government then stated that defense counsel would:

---

[2] On February 15, 2006, the Court denied Shvartzman's motion to sever his trial from Petitioner's trial.  (See Gov't Ex. F.)  The Court noted that Petitioner had stated she "will testify at trial that Shvartzman was not involved in the diamond business in any material way."  The Court also noted that Petitioner had "conditioned her willingness to testify on Shvartsman's behalf on his trial occurring after hers."  (Id. at 2.)  One month later, on March 16, 2006, Petitioner pled guilty. Shvartzman's trial commenced a few days later on March 21, 2006, during which Petitioner testified on Shvartzman's behalf.  On April 3, 2006, Shvartzman was convicted by a jury of mail and wire fraud.

[3] Upon the consent of the Petitioner, Magistrate Judge Francis heard the plea; on April 10, 2006, the undersigned accepted the plea.

> [T]ry to convince immigration authorities that she is suffering from a
> hardship and should remain in this country.  Notwithstanding that attempt,
> the presumption here is certainly, having pled guilty to an aggravated
> felony, in fact, three aggravated felonies, she will presumptively be
> deported from this country and, therefore, represents a serious flight risk.

(Tr. 20-21).  In response, Petitioner's counsel, Mr. Markham, stated that:

> I do not believe that it is a foregone conclusion that she will be deported.
> There is in the immigration law a <u>hardship provision</u> that allows people
> who have perpetrated nonviolent crimes — frauds are among them, and
> she has no hint of violence here, no prior record — to be <u>allowed to stay</u>
> <u>here under a hardship exception. And she has that exception double or</u>
> <u>triple over</u>.

> Her medical needs are here . . . .  She is an Orthodox Jew . . . .  We think
> we have some compelling arguments as to why she should not go to jail,
> although she acknowledges the risk that she might . . . .  [S]he wants to
> live with her in-laws and her husband here. There are many . . .  reasons
> for her to stay [i.e. not to flee] . . . .

(Tr. 23-25 (emphasis added).)  Magistrate Judge Francis denied the Government's

request for electronic monitoring; Petitioner's curfew and other conditions of release

remained in effect.  (Tr. 28.)

C.  <u>Petitioner's Sentencing</u>

In Markham's sentencing submission to this Court, dated January 10, 2007,

Markham argued that Petitioner should receive a non-custodial sentence.  Markham cited,

<u>inter alia</u>, Petitioner's medical problems, her small children, that she did not live a lavish

lifestyle, and that she claims to have engaged in fraudulent activity because she wished to

repay other dealers to whom she owed money.  Markham also cited the likely

immigration consequences of her guilty plea:  "it is submitted that the best course here

for this non-violent offender, <u>who will likely be deported to Israel anyway</u>, is to sentence

her to probation, with a condition that she make restitution."  (Gov't Ex. A, at 17

(emphasis added).)  Markham, arguing that Petitioner would be adequately deterred,

stated:  "[s]he will almost undoubtedly be deported and excluded for ten years for the fraud conviction."  (Id. at 18.)  In its response to Markham's sentencing submission, the Government also noted the likelihood that Petitioner would be deported.[4]  (Gov't Ex. C, at 11.)

On January 18, 2007, Petitioner appeared in this Court for sentencing.  Markham argued that Petitioner should be treated leniently because of her medical condition and her children, and because she committed fraud with the intention of repaying her business associates.  The Government opposed Markham's application for a non-custodial sentence, noting the seriousness of Petitioner's crimes.  The Government pointed out that Petitioner:

> ha[d] [another] immigration problem . . . because she filed an amendment to her immigration papers while she was out on bail and told the immigration authorities that she had never been charged with a crime. . . . The immigration authorities are aware now of the fact she has been found guilty of a crime.

(Jan. 18, 2007 Sentencing Tr.; Gov't Ex. B, at 15-16.)  Markham argued that "the Court should [not] take into account what is going to happen with immigration," except that:

> If she does a custodial term . . . when she gets out, the first thing she is going to face is an immigration detainer.  This is an excludable offense if ever there was one — no.  Actually, there are some that are worse, but this counts, and she will <u>in all likelihood have to go back to Israel unless she qualifies for an immigration hardship because of the need to stay here and keep her family together</u>.

> If it is not a hardship enough now for this court to take it into account, it won't be enough of a hardship for immigration because they're pretty tough on that these days.  So it seems to me that what will happen is that she'll get out, she will have been untethered from her family for a while and the family will face the very unenviable choice, . . . there she is back

---

[4] The Presentence Investigation Report ("PSR") noted, at two places, that Petitioner's application for adjustment of status had been denied, and that she was subject to removal proceedings.  These references appear to refer to her overstay (as her temporary visa expired on January 8, 2003), and not to her guilty plea and conviction.  (See PSR at 13, 25.)

> in Israel with no family or she uproots them to go back to Israel, or
> somehow we find a kinder or gentler immigration than they have been
> recently . . . .

(Tr. 18 (emphasis added).)

In calculating Petitioner's advisory guidelines range , the Court found that Petitioner obstructed justice by testifying falsely during her husband's trial.[5]  The Court found that Petitioner's family circumstances were not "sufficiently extraordinary" to warrant a downward departure.  The Court also found that Petitioner's physical condition, "[although] extraordinarily bad because of the suppression of Ms. Diunov's immune system, her apparent liver infections, anemia, hepatitis, hypertension, osteoporosis and colitis," did not warrant a downward departure, because the Bureau of Prisons could adequately care for her and the Court would "monitor this kind of case very closely." (Tr. 21-22.)  The Court sentenced Petitioner to a within-guidelines sentence of 78 months imprisonment.  The Court also sentenced Petitioner to three years supervised release; ordered $1.7 million in restitution; and required that Petitioner comply with the directives of the immigration authorities.  (Tr. 23-24.)

D.  Remanding Petitioner

In a letter dated February 9, 2007, the Government requested that Petitioner be remanded, because Petitioner had continued to engage in fraudulent activities while out on bail.  The Court held a hearing on February 27, 2007 to determine whether to revoke Petitioner's bail.  (Gov't Ex. E.)  Petitioner did not appear at the hearing, and the Court concluded that detention was required.  (Gov't Ex. E., at 17.)

---

[5] At sentencing, the Government argued that, by pleading guilty, Petitioner "set herself up to testify for her husband, and in that testimony unfortunately she lied on multiple occasions."  (Tr. 15.)

At the hearing, Markham discussed Petitioner's intended grounds of appeal. Markham stated that Petitioner had had discussions with another attorney, and that this attorney told Petitioner that she had a basis for invalidating her guilty plea, because Markham (1) misadvised Petitioner regarding her sentencing in this Court, and (2) misadvised Petitioner regarding the immigration consequences of her guilty plea. Markham stated that he had advised Petitioner that (1) the Court "could depart downward from the guidelines, and that we had several good arguments" to support a downward departure, and (2) "I thought [Petitioner] had a good argument for being allowed to remain in the country under an INS hardship exception, even though her fraud conviction would normally exclude her for from the United States for ten years because she has a minor child here and a family here."[6]  (Gov't Ex. E., at 11.)  Markham stated that Petitioner "entered into a plea on those bases," but that "as it turns out, she doesn't now have any confidence that the INS will not exclude her, and as it turns out, Your Honor gave her the low end of the guideline range rather than departing downward from the guideline range."  (Id.)

E.  Motion to Withdraw as Counsel

On March 2, 2007, Markham filed a motion to withdraw as Petitioner's counsel. In the motion, Markham explained in greater detail the content of his advice to Petitioner regarding the immigration consequences of her guilty plea:

> The advice the undersigned counsel gave her concerned not only the general risks and benefits, in terms of sentencing potentials, of changing her plea to guilty. Undersigned counsel also advised her concerning certain collateral matters that were very important to her. One such matter was on the issue of whether should could obtain a "hardship" exception

---

[6] Markham stated on the record that he "had a case in the Midwest once where a very effective immigration lawyer told [him] that in her view that was a very good hardship."  (Id.)  Markham did not provide additional details about this case.

> from the Immigration and Naturalization Service so that she would be allowed to remain in this country despite her guilty plea on the fraud charges contained in the indictment. Normally, a fraud conviction would require her exclusion from the United States since she is a citizen of Israel and was here under a temporary visa while she applied for permanent resident status. Counsel advised her that she had a <u>good argument</u> for a hardship exception because her two daughters were here in the United States, as well as her husband.

(Pet'r Ex D, at 1-2.)  On April 10, 2007, the Court granted Markham's motion to withdraw as Petitioner's counsel.

### F. Diunov's 2255 Petition

On March 31, 2008, Petitioner filed, through her new counsel, John W. Mitchell, the instant petition.[7]  Petitioner claims that she "was denied the effective assistance of counsel and that [her] guilty plea was not a knowing, informed plea."  (Pet. Ex. A, at 5.)

### 1. Representations by Markham

In her petition, Petitioner provides the following facts in support of her claim for relief:

> At the time I was considering the Government's offer to plead guilty in this case, I met with my lawyer, John Markham, and we discussed among other things, what consequences a guilty plea would have upon my immigration status, since I was now married to a man who was an American citizen and we had a child who was also an American citizen. Mr. Markham told me that I had a <u>very good chance</u> of being granted what he termed to be a 'hardship waiver' based upon the fact that I was married to an American citizen, I had two children living in this country and my health was very poor.  I relied upon this advice when I made my decision to enter a guilty plea.  <u>I would not have taken a plea if I knew that I would be automatically deported and that there was no such thing as a 'hardship waiver.'</u>

---

[7] On February 15, 2007, Petitioner filed a notice of appeal of her convictions with the Second Circuit Court of Appeals.  By order dated August 9, 2007, the Second Circuit granted Petitioner's motion to "hold [the] appeal in abeyance while counsel brings an application in the district court to vacate the judgment pursuant to 28 U.S.C. § 2255."

(<u>Id.</u> (emphasis added).)  Petitioner also submitted an "Affirmation in Support" of her

petition.  In her Affirmation, Petitioner states that she had a series of conversations with

Markham "[d]uring the period leading up to [her] decision to enter a guilty plea," and that

"there were two issues that were truly central to [her] decision":  (1) the first issue was

whether she would receive a jail sentence, and (2) the second issue was whether she

would be deported.  Petitioner states that "Markham assured me that [he had] spoken

with an attorney who was a specialist in immigration matters and that he had confirmed

that not only was I eligible for a 'hardship waiver,' but that I met all the necessary criteria

to obtain such a waiver."  (Pet'r. Ex. B, at 4 ¶¶ 9-10.)  Petitioner states that "if I knew that

by pleading guilty I would be deported, separated from my family and never permitted to

return, I would never have done so."  (<u>Id.</u> ¶ 13.)

       2.  <u>Immigration Status</u>

In support of her petition, Petitioner submitted an opinion letter written by

Thomas E. Moseley and addressed to her counsel, Mr. Mitchell.  (Pet'r. Ex. E.)  Mr.

Moseley's letter states that he previously served as Chief of the Immigration Unit in the

United States Attorney's Office for the Southern District of New York and that he has

been engaged in private immigration practice (concentrating on immigration deportation

defense) for over twenty years.  (<u>Id.</u> at 1.)  Mr. Moseley concludes that Markham was

"flatly wrong in his advice that Ms. Diunov would be eligible for a waiver of removal

based upon hardship to her."  (<u>Id.</u> at 2.)  First, Mr. Moseley claims that, as an alien who

never obtained lawful permanent residence and who was convicted of an aggravated

felony, Petitioner would be subject to "expedited removal" proceedings under Section

238(b) of the Immigration and Nationality Act, which makes an alien, like Petitioner,

statutorily ineligible for any discretionary relief from removal (including any hardship

waiver).  Second, Mr. Moseley claims that, even if the Government does not bring

expedited removal proceedings under Section 238 (and instead brings regular Section 240

removal proceedings), the Illegal Immigration Reform and Immigrant Responsibility Act

of 1996 ("IIRIRA") eliminates harm <u>to the alien</u> as a basis for cancellation of removal.

(<u>Id.</u> at 3.)

The Government, in its response to the petition, disagrees with Petitioner's (and

Mr. Moseley's) characterization of the immigration consequences of her guilty plea.  The

Government argues that Markham was correct in his advice to Petitioner that, despite her

conviction, she could apply for a hardship waiver from removal.

Susan Egan, a senior attorney at the Department of Immigration and Customs

Enforcement ("ICE") submitted a letter to the Court, dated June 9, 2008, which is

annexed to the Government's submission as Exhibit H.  Ms. Egan's letter states that:

"The United States Attorney's Office has inquired as to the current immigration status of

Ms. Diunov and the effect her convictions will have upon her application for lawful

permanent resident status."[8]  (Gov. Ex. H, at 1.)  The letter summarizes the conclusions

reached by ICE:

> (1)  Petitioner is removable by virtue of <u>inter alia</u> her conviction for an
> aggravated felony under Section 237(a)(2)(A)(iii) of the Act;[9]
>
> (2)  Nonetheless, Petitioner <u>is</u> eligible to apply for relief from removal.  If
> she were placed in removal proceedings, she would have to demonstrate

---

[8] The letter notes that Petitioner's application is currently pending with Citizenship and
Immigration Services ("CIS").  The Court has not received information from the parties as to the
present status of the application.

[9] The letter concludes that Petitioner is also removable as an "overstay" under Section
237(a)(1)(B), and pursuant to Section  237(a)(2)(A)(i) because she committed a crime involving
moral turpitude within five years of her entry into the United States.

that she is <u>admissible</u> to the United States under Section 212 of the Act. To do that, she would be required to file a <u>waiver</u> (with respect to her criminal grounds of inadmissibility) pursuant to Section 212(h) of the Act.

(3) To be eligible for a waiver, she would have to demonstrate that: "she is the spouse, parent, son or daughter of a United States citizen or lawful permanent resident and that the denial of her admission would result in <u>extreme hardship to her relative(s)</u>."  As noted above, Petitioner is the spouse of a United States citizen and is the mother of both a United States citizen (her younger daughter) and a lawful permanent resident (her older daughter).

(4)  Petitioner is not precluded from applying for a Section 212(h) waiver despite the fact that she was convicted of an aggravated felony:  Section 212(h) states in pertinent part that no waiver shall be granted to an "alien lawfully admitted for permanent residence . . . [if] since the date of such admission the alien has been convicted of an aggravated felony," and Petitioner is not (and has never been) a lawful permanent resident.

(5) Although Petitioner is eligible to apply for this discretionary relief, "this, however, does not mean that she will be granted this waiver." Section 212(h) of the Act states that the Attorney General may, in his discretion, grant this relief.[10]

(6)  There is the possibility that the Department would seek to remove Petitioner in expedited proceedings pursuant to Section 238(b), but "[i]t is more likely . . . that the Department would seek to remove [Petitioner] from the United States under Section 240 (removal) proceedings before an immigration judge."[11]

(<u>Id.</u> at 2-3.)  The letter concludes that "[t]herefore, any concerns regarding restrictions to relief under Section 238(b)(5) of the Act, are unfounded and speculative."  (<u>Id.</u> at 3.)

---

[10] The letter also concludes that, apart from the Section 237 grounds for removability discussed above, Petitioner may be inadmissible pursuant to Section 212(a)(6)(C)(i) because of a "material misrepresentation" in her adjustment of status application that was filed on December 19, 2005, namely, that she never "knowingly committed any crime of moral turpitude."  To apply for relief from removal, Petitioner would have to seek to obtain a waiver (with respect to this ground of inadmissibility) pursuant to Section 212(i).  In order to be successful in obtaining this waiver, Petitioner would also have to demonstrate that her removal would result in extreme hardship to family members who are either U.S. citizens or lawful permanent residents.  This immigration judge has discretion to grant, or to deny, a waiver.  (Gov. Ex. H, at 2-3.)

[11] Ms. Egan's letter, however, did not explain why, in her view, it was more likely that the Government would seek to remove Petitioner in regular Section 240 proceedings.

In Petitioner's reply, her counsel notes that Mr. Moseley's opinion and Ms. Egan's conclusions as to Petitioner's eligibility for a waiver of removal can be reconciled as follows:  a discretionary waiver pursuant to Section 212(h) would be based on hardship to Petitioner's spouse or children, but it "does not allow hardship to Ms. Diunov to be considered."  Petitioner's reply also contained a reply opinion letter submitted by Mr. Moseley.  It states that that Ms. Egan's letter "implicitly concedes [that] there is no general waiver from removal based upon hardship to Ms. Diunov even remotely akin to the long ago repealed provisions for suspension of deportation" (provisions, repealed by the 1996 IIRIRA).  The letter also states  that "given the picture that the government paints of Ms. Diunov, it is difficult to discern any rational reason why the government would not resort to Section 238 [expedited removal], thus shortening and expediting removal while sparing the government the costs of detention in more protracted proceedings."  Mr. Moseley concludes that Markham's "misadvice" about the nature and existence of waiver based on hardship "concealed from her the fact that Section 238 was waiting in the wings."  (July 21, 2008 Reply Letter, Ex. A, at 1-2.)

        3.  <u>Supplemental Affidavits</u>

On February 27, 2009, the Court issued an order directing Markham to answer certain questions about the content of his advice to Petitioner on immigration matters. The Court also issued an order directing Petitioner to inform the Court of any advice she received on immigration matters from sources other than Markham.

Markham's declaration, submitted to the Court on March 16, 2009, states that he told Petitioner that:

> (1) a conviction or guilty plea would result in deportation or removal from the country; but

(2) there may be some way she could avoid deportation under a hardship theory because of her adolescent daughter who was either a United States citizen or resident alien;

(3) he was not an immigration specialist and could not represent her with respect to immigration matters, but that he would ask a professional acquaintance (who did immigration work) about the possibility of a hardship waiver;

(4) he spoke to an immigration attorney with experience in criminal immigration matters, and based on this discussion, he thought she had a "good argument" for a hardship waiver; [12] and

(5) she needed a New York immigration lawyer to deal with the immigration matter.

(Markham Supp. Aff. at 1-4.)  Markham's declaration states that he does not recall whether he said she would "personally" be able to apply:  "I did not get technical with her."  (Id. at 3.)  Markham's declaration also states that he did not do any additional research on the immigration matter besides the phone call to the immigration attorney in Boston.

In her supplemental affirmation, dated March 13, 2009, Petitioner states that she "did not receive any advice concerning the effect that a guilty plea would have on my immigration status from anyone other than my trial counsel, John J.E. Markham." (Duinov Supp. Aff. ¶ 1.)  Petitioner also states that: "Markham told me that he had . . . checked with the immigration lawyer [in Boston] and that if I decided to plead guilty I would not be deported and put in jail because I have compelling circumstances like my husband is a United States citizen, my baby was born here, I had [a] liver transplant in

---

[12] According to Markham, the attorney-acquaintance he reached out to, Ms. Eileen Morrison, told him that she did not handle criminal immigration matters.  Ms. Morrison referred Markham to another attorney who did have experience in these matters.  Markham states that he does not recall the name of this second attorney, but that it is this attorney's advice regarding the possibility of a hardship waiver that Markham relied upon and was referencing in his conversations with Petitioner.

New York City, I was a first-time non-violent offender and it was an economic crime.

He assured me that everything is going to be fine <u>and I would not be deported</u>." (<u>Id.</u> ¶ 2

(emphasis added).)  This appears to be the first time that Petitioner alleges that Markham

told her that she would <u>not</u> be deported (rather than simply advising her that she had good

argument for or very good chance of obtaining a hardship waiver).[13]

II.  <u>Discussion</u>

Petitioner claims that Markham's advice regarding the immigration consequences

of her guilty plea was deficient, and that it rendered her plea unknowing and involuntary.

As set forth below, the Court finds that Markham's performance did not fall outside the

wide range of professional competent assistance, and, therefore, that there is no basis to

vacate Petitioner's conviction.  Markham's advice to Petitioner broadly reflected the

immigration consequences of her guilty plea.  Markham correctly advised Petitioner that

(1) she was deportable based upon her guilty plea to an aggravated felony, but that (2)

she may be able to stay in the country under a hardship exception.  The fact that

Markham failed to explain and/or misstated certain of the factors that would relevant to

obtaining a hardship waiver was not objectively unreasonable under the circumstances,

and therefore, did not constitute ineffective assistance of counsel.

A.  <u>Applicable Law</u>

"Ineffective assistance of counsel 'may render a guilty plea involuntary, and

hence invalid.'"  <u>United States v. Couto</u>, 311 F.3d 179, 187 (2d Cir. 2002) (quoting

---

[13] On April 1, 2010, Petitioner submitted a supplemental memorandum of law addressing the
Supreme Court's recent decision in <u>Padilla v. Kentucky</u>, -- S. Ct. --, 2010 WL 1222274 (Mar. 31,
2010).  The Government submitted a response on April 6, 2010.

Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).[14]  A claim of ineffective assistance of counsel is evaluated under the two-part test set forth in Strickland v. Washington.  466 U.S. 668, 687-88, 693 (1984); see Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  To prevail, the petitioner must (1) show that his counsel's performance fell below "an objective standard of reasonableness," judged by "prevailing professional norms" (the performance prong); and (2) "affirmatively prove prejudice" by demonstrating that, but for counsel's unprofessional errors, the result of the proceeding would have been different (the prejudice prong).  Strickland, 466 U.S. at 687-88, 693-94; see Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001).

As a general matter, to demonstrate that counsel's performance was deficient, the petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001).  This standard is "rigorous," Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), and "highly demanding," Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).  To demonstrate prejudice with respect to a decision to plead guilty, the second part of the Strickland test, the petitioner must show that there is "'a reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial.'"  Couto, 311 F.3d at 187 (quoting Hill, 474 U.S. at 59).  If the petitioner cannot satisfy the performance prong of Strickland, the question of whether he was prejudiced by the alleged violation need not be addressed.  466 U.S. at 689.

---

[14] The Second Circuit has explained that a claim that a guilty plea "was involuntary or unknowing due to ineffective assistance of counsel" is evaluated using the framework established in Strickland v. Washington.  Couto, 311 F.3d at 187.

In a recent decision, <u>Padilla v. Kentucky</u>, the Supreme Court confirmed that advice regarding the deportation consequences of a criminal conviction may be the subject of a claim for ineffective assistance of counsel under the Sixth Amendment. <u>Padilla v. Kentucky</u>, No. 08-651, -- S. Ct. -- , 2010 WL 1222274, at *6 (U.S. Mar. 31, 2010).  The Court traced the dramatic "changes to our immigration law" over the last half century, <u>id.</u> at *4-5, and concluded that the "weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation," <u>id.</u> at 7;  <u>see also</u> <u>id.</u> at *5 (explaining that, under contemporary law, deportation is the "practically inevitable" consequence of committing a removable offense, and that, accordingly, "deportation is an integral part — indeed, sometimes the most important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes").

Prior to the Supreme Court's decision in <u>Padilla</u>, some circuits, including the Second Circuit, upheld ineffective assistance of counsel claims in the context of advice regarding the deportation consequences of a guilty plea, but only when the attorney's advice constituted an "affirmative misrepresentation."  <u>See</u> <u>Couto</u>, 311 F.3d at 187-88 (concluding that "an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of unreasonableness," but that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea" meets the first prong of <u>Strickland</u>).   <u>Padilla</u> eliminated the distinction between affirmative misrepresentations and omissions, finding that "there is no relevant difference between an act of commission and an act of omission

in this context."  2010 WL 1222274, at *9 (internal citations and quotation marks
omitted).

The Court in <u>Padilla</u> gave some guidance as to the scope and nature of legal
advice that courts should require of practitioners in the immigration context.  Padilla, a
lawful permanent resident in the United States for over 40 years, pled guilty to drug-
distribution charges in Kentucky, and faced deportation as a consequence of his
conviction.  <u>Id</u>. at *3; <u>see</u> <u>id.</u> at *8 (noting that the clear text of the removal statute, 8
U.S.C. § 1227(a)(2)(B)(i), "commands removal for all controlled substances convictions
except for the most trivial of marijuana possession offenses").  Padilla claimed that his
counsel "not only failed to advise him of this consequence prior to entering the plea, but
also told him that he 'did not have to worry about immigration status since he had been in
the country so long.'"  <u>Id</u>. at *3.  The Court found that this was "not a hard case" in
which to find constitutionally deficient performance:  "[t]he consequences of Padilla's
plea could easily be determined from reading the removal statute, his deportation was
presumptively mandatory, and his counsel's advice [and false assurance that his
conviction would not result in deportation] was incorrect."  <u>Id</u>. at *8.

The Court concluded that, at least where the "terms of the relevant immigration
statute are succinct, clear, and explicit in defining the removal consequence[s] for . . .
conviction," constitutionally competent counsel must advise a defendant that his
conviction makes him subject to mandatory deportation.  <u>Id</u>.  The Court recognized that
"[i]mmigration law can be complex" and that "[s]ome members of the bar who represent
clients facing criminal charges . . . may not be well-versed in it."  "There will, therefore,
undoubtedly be numerous situations in which the deportation consequences of a

particular plea are unclear or uncertain." Id.  The Court noted that, in such cases, "[t]he duty of the private practitioner . . . is more limited."  In particular:

> When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequences is truly clear . . . the duty to give correct advice is equally clear.

Id. at *8.[15]

B. Analysis

In this case, Markham correctly advised Petitioner that a plea of guilty made her subject to deportation as an aggravated felon under the immigration statutes.  There is no question that Petitioner was aware of this fact at the time she entered her plea.  (See March 15, 2006 Plea Tr.; Pet. Ex. C., at 6, 19-21.)

As to the availability of a hardship exception, the Court has reviewed the applicable immigration statutes, the relevant caselaw, and the opinion letters submitted by Petitioner and the Government.  The Court finds that Markham correctly advised Petitioner that a hardship waiver was available to her.

Section 212(h) of the INA authorizes the Attorney General to waive certain grounds pursuant to which an applicant may be deemed inadmissible, including that the

---

[15] The Court rejected the position urged by the Solicitor General (and previously the law of this Circuit) that Strickland should apply only in cases of "affirmative misadvice."  The Court explained that such a holding would invite at least two absurd results: (1) it would give counsel "an incentive to remain silent on matters of great importance," which would be "fundamentally at odds with the critical obligations of counsel to advise the client of the advantages and disadvantages of a plea agreement"; and (2) it would deny a class of citizens least able to represent themselves with "available advice" on an issue like deportation.  Id. at *9 (internal quotation marks omitted).  The Court noted that "[l]ack of clarity in the law . . . does not obviate the need for counsel to say something about the possibility of deportation, even though it will affect the scope and nature of counsel's advice."  Id. at *8 n.10.

applicant committed an aggravated felony.[16]  8 U.S.C. § 1182(h); Jankowski-Burczyk v.

INS, 291 F.3d 172, 175 (2d Cir. 2002).  In particular, the Attorney General has discretion

to grant a waiver:

> in the case of an immigrant who is the spouse, parent, son, or daughter of a
> citizen of the United States or an alien lawfully admitted for permanent
> residence if it is established to the satisfaction of the Attorney General that
> the alien's denial of admission would result in extreme hardship to the
> United States citizen or lawfully resident spouse, parent, son, or daughter
> of such alien . . . .

8 U.S.C. § 1182(h)(1)(B).[17]  As noted above, the statutory scheme "allows [for] the

possibility of [§ 212(h)] relief if the Attorney General uses general removal procedures,"

but "bars [such] relief to non-LPR aggravated felons if the Attorney General uses

expedited procedures."[18]  Jankowski-Burczyk, 291 F.3d at 181.  Thus, Petitioner may

---

[16] The Second Circuit has explained that, although Section 212(h), by its terms, "provides for a waiver of admissibility only[,] . . . by a quirk elsewhere in the INA, . . . § 212(h) allows for a waiver of deportability as well."  Jankowski-Burczyk v. INS, 291 F.3d 172, 175 (2d Cir. 2002).

[17] As noted above, Section 212(h) relief is not available to an "alien lawfully admitted for permanent residence . . . [if] since the date of such admission the alien has been convicted of an aggravated felony."  8 U.S.C. § 1182(h)(2) (emphasis added).  Petitioner was never admitted as a lawful permanent resident.

[18] Petitioner contends that, following the IIRIRA's elimination of the Attorney General's broad discretion to grant relief from deportation, see Padilla, 2010 WL 1222274, at *5 (noting that, in the five-year period prior to 1996, the Attorney General had "exercised [such] authority to prevent the deportation of over 10,000 noncitizens"), deportation is now the inevitable consequence of a conviction for a removable offense.  In support of this contention, Petitioner relies on the Second Circuit's decision in Couto, which stated that: "[g]iven these [1996] amendments, an alien convicted of an aggravated felony is automatically subject to removal and no one – not the judge, the INS, nor even the United States Attorney General – has any discretion to stop the deportation."  311 F.3d at 189-90.  Petitioner's reliance on dictum from Couto is misplaced.  The Second Circuit in Couto did not address whether a Section 212(h) hardship waiver is available to a non-lawful permanent resident alien ("non-LPR") placed in removal proceedings  The Second Circuit did address whether a Section 212(h) hardship waiver is available to a non-LPR in Jankowski-Burczyk.  In that case, the court confirmed that a Section 212(h) hardship waiver is available to non-LPRs convicted of an aggravated felony.  The court found that the provision was constitutional (that it did not violate the equal protection component of the Due Process Clause of the Fifth Amendment), despite the fact that the provision permitted such relief in the case of a non-LPR, but foreclosed any relief to aliens who had previously secured LPR status.  291 F.3d at 175, 179-81.

apply for a Section 212(h) hardship waiver in an application to adjust her status, so long as the Government does not seek removal through the use of expedited proceedings. To succeed, Petitioner would have to demonstrate, inter alia, that her removal would cause extreme hardship to her husband or to one or both of her young daughters.[19]

Petitioner contends that Markham's advice was nonetheless deficient, because he (1) advised her that she had a "good argument" for and a "very good chance" of obtaining a hardship waiver, but (2) failed to explain and/or misstated certain factors that would be relevant to securing (and that could lessen the likelihood of obtaining) a hardship waiver.[20] Petitioner claims that Markham affirmatively misled her as to the immigration consequences of her plea, thus rendering his advice ineffective under United States v. Couto. 311 F.3d 179, 187 (2d Cir. 2002). The Court disagrees.

In Couto, the leading pre-Padilla decision on immigration advice in this Circuit, the court held the attorney's misrepresentations to his client regarding the potential immigration consequences of her guilty plea deprived her of effective assistance of counsel.[21] Defense counsel assured his client that "they could deal with [the]

---

[19] The immigration judge and, on appeal, the Board of Immigration Appeals ("BIA") act on behalf of the Attorney General in making this determination. See Zhang v. Gonzales, 457 F.3d 172, 174 (2d Cir. 2006). Federal courts "lack jurisdiction to review the discretionary and factual determinations [committed to the BIA] underlying a denial of a waiver of inadmissibility." Camara v. Department of Homeland Security, 497 F.3d 121, 122 (2d Cir. 2007) (per curiam).

[20] The Court finds that the mechanics and availability of a Section 212(h) hardship waiver in the case of a non-LPR does not fall into that category of cases where the immigration law is sufficiently "succinct and straightforward" such that an attorney would be, under Padilla, under an affirmative duty to advise his client in this regard. In making this finding, the Court relies on, in part, the thorough, and yet conflicting, legal opinion letters submitted in this case.

[21] In Padilla, the Supreme Court overruled that part of the Second Circuit's decision in Couto, which held that "an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of unreasonableness." The Second Circuit's discussion in Couto as to what may constitute affirmative misadvice in the context of a claim for ineffective assistance of counsel remains, in the Court's view, good law.

immigration problem after the guilty plea, and [that] there were many things that could be done to prevent her from being deported, including asking the judge for a letter recommending against deportation."[22]   Id. at 183.  "T]hroughout the [plea] hearing, no mention was made of any possible deportation."  In fact, Couto's guilty plea would lead to automatic and virtually unavoidable deportation.  Id. at 184.  The court determined that counsel affirmatively mislead the defendant, and as a result, that the defendant met the first prong of the Strickland.  Id. at 188.

In this case, Markham did not mislead Petitioner as to the immigration consequences of her plea.  Markham advised Petitioner that she was subject to deportation as a result of her fraud conviction.  Markham advised Petitioner that she was eligible for a hardship waiver, which was true, and he did not assure her that any factor as it related to such a waiver would actually or necessarily prevent her deportation.[23]   See Zhang v. United States, 543 F. Supp. 2d 175, 183 (E.D.N.Y. 2008) (distinguishing Couto, and finding that counsel's performance was not ineffective where (1) the defendant was aware of the deportation consequences of a conviction, and (2) counsel advised the

---

[22] Prior to 1990, a trial judge had the authority to issue a judicial recommendation against deportation (called "JRAD").  This recommendation was binding on the Attorney General, and gave the judge "conclusive authority to decide whether a particular conviction should be disregarded as a basis for deportation."  Couto, 311 F.3d at 189 (quoting Janvier v. United States, 793 F.2d 449, 452 (2d Cir. 1986).  As part of the Immigration Act of 1990, Congress eliminated the JRAD procedure.

[23] The Court does not credit Petitioner's allegation, contained for the first time in her "supplemental affidavit," that Markham assured her that she "would not be deported." (Diunov Supp. Aff., Mar. 13, 2009, at ¶ 2 (emphasis added).)  This allegation contradicts the allegations contained in Petitioner's own affidavit submitted in support of her Section 2255 petition that Markham advised her that she had very good chance of obtaining a waiver, not that any such result was certain.  (Pet. Ex. A, at 5.)  That Markham's advice to Petitioner concerned the possibility that Petitioner would obtain a hardship waiver is also supported by (1) Markham's statements to the Magistrate Judge at the plea hearing, (2) Markham's statements to this Court in his motion to withdraw as counsel, and (3) Markham's statements in his supplemental affidavit submitted in this case.

defendant, incorrectly, that there were factors that "could be helpful" to him in seeking relief from deportation (where no such relief was available in his case) but did not suggest that any factor would actually prevent deportation or belittle the deportation consequences of the plea).

With respect to Markham's representations to Petitioner regarding her prospects for obtaining a hardship waiver, the Court finds that these representations were not objectively unreasonable under the circumstances.  In advising Petitioner, Markham sought out a colleague with experience in the immigration field, who then referred Markham to an attorney with specific experience handling criminal immigration matters; Markham told Petitioner that, on the basis of these conversations, he thought she had a "good argument" for obtaining a hardship waiver; Markham cautioned Petitioner that he was not an immigration specialist, and advised her that she should consult an immigration lawyer.  See Zhang, 543 F. Supp. at 183.  The Court notes that Petitioner had previously engaged an immigration attorney to apply for a change of status, and therefore, was in a better to position than many defendants to seek such counsel.

The Court also finds that Markham's failure to explain certain factors that would be relevant to securing a hardship waiver was not unreasonable under the circumstances.  First, Petitioner points to Markham's failure to explain that the Section 212(h) hardship waiver focuses on hardship to her family, and not on hardship to her.  Petitioner, however, fails to explain in what way the perspective from which hardship is judged would affect her application for or the availability of a hardship waiver.  Petitioner in this case has three qualifying relatives that could claim hardship, and that could form the basis of an application to adjust her status.  (See Jan. 18, 2007 Sentencing Tr.; Gov't Ex.

B, at 18 ("[T]he family will face the very unenviable choice, . . . there she is back in Israel with no family or she uproots them to go back to Israel.")[24]

Second, Petitioner points to Markham's failure to advise Petitioner of the possibility that the Government could bring expedited Section 238 proceedings (where, as noted above, a Section 212(h) hardship waiver would not be available). The Attorney General, however, has discretion to decide whether to pursue expedited proceedings. The decision whether to grant Petitioner's application for an adjustment of status based upon extreme hardship to her relatives also lies within the discretion of the Attorney General and his delegates. See 8 U.S.C. § 1182(h)(1)(B). Accordingly, there was no guarantee that the Government would seek to remove Petitioner in expedited Section 238 proceedings, and Markham was correct in informing Petitioner that that a hardship exception was potentially available to her.[25] See Jankowski-Burczyk, 291 F.3d at 179 (noting that that, at least in 2002, "the Attorney General ha[d] decided to place all non-LPR aggravated felons who may be eligible for § 212(h) relief in general removal proceedings instead of in expedited removal proceedings, thus preserving their ability to apply for a § 212(h) waiver").

---

[24] See In re Cervantes-Gonzalez, 22 I. & N. Dec. 560, 565-66 (B.I.A. 1999) (identifying factors relevant to application of the extreme hardship standard).

[25] Additionally, in Petitioner's reply brief, Petitioner's counsel and Mr. Moseley contend that Markham misadvised Petitioner as to the length of time she would be excluded from the United States. This contention is based on statements that Markham made to the Court during Petitioner's sentencing — that Petitioner would be excluded for "ten years" as a result of her fraud conviction, whereas, in fact, there is no time limit on her inadmissibility. There is, however, no evidence that Markham ever advised Petitioner in this regard prior to her entering a guilty plea, and even if he had, there is no evidence that Petitioner made any judgment based on the distinction between a 10-year and an unlimited exclusion. Rather, Petitioner's Section 2255 petition to vacate her guilty plea was, from the outset, based on the proposition that Markham's advice to her that she had a good chance of not being deported was faulty, because, as she has contended, no such relief is readily available to her. In its decision today, the Court concludes that Markham's advice was not deficient in this regard.

Thus, the Court finds that Markham's advice to Petitioner concerning the immigration consequences of her plea was not objectively unreasonable under the circumstances. Because the Court finds that Petitioner has not met the performance prong under Strickland, the Court does not address the issue of whether Petitioner was prejudiced by any alleged violation.

C. Evidentiary Hearing

The Court has determined that a full evidentiary hearing, requiring Petitioner's and Markham's presence and testimony, is not required in this case. Section 2255 provides that: "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Second Circuit has explained, however, that, even where a petition is not "so clearly bereft of merit as to be subject to dismissal on its face," the district court may "use methods [consistent with] Section 2255 to expand the record without conducting a full-blown testimonial hearing." Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001); see id. ("[A]llegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.") (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see also 28 U.S.C. § 2255(c) (providing that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing"); Boakye v. United States, 2010 WL 1645055 (S.D.N.Y. Apr. 22, 2010).

In this case, the Court ordered detailed affidavits from Markham and Petitioner in order to supplement the record. The Court finds that "the testimony of [Petitioner] and

his trial counsel would add little or nothing to [these] written submissions." Chang, 250 at 86. There is broad agreement in this case as to the content of Markham's advice to Petitioner: that she was subject to deportation, but that, based on her compelling family and personal circumstances, that she had a good chance of being able to remain in this country on a hardship waiver. The Court has held that, on these facts, Markham's advice to Petitioner was not deficient, and that there is no basis to vacate Petitioner's conviction.

III. Conclusion

For the reasons stated above, the Court DENIES the petition. (Dkt. No. 1.) The Court, however, issues a certificate of appealability with respect to Petitioner's claim of ineffective assistance of counsel. Petitioner has made a "substantial showing of the denial of federal right," such that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner." Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (internal citation and quotations marks omitted). The Court notes that an appeal in this case may permit helpful guidance from the Court of Appeals as to what level of precision the Sixth Amendment requires of lawyers, in light of the Supreme Court's decision in Padilla v. Kentucky, 2010 WL 1222274 (U.S. Mar. 31, 2010), in advising their clients as to the possible immigration consequences of a guilty plea.

The Clerk of the Court shall close this case; any pending motions are moot.

SO ORDERED.

Dated: New York, New York
June 15 , 2010

Kimba M. Wood
United States District Judge